We'll hear the next case, Gregory v. ProNAi Therapeutics. Sorry, Your Honor. Good morning, Your Honor. May it please the Court, I'm Shannon Hopkins with Levy & Korzinski on behalf of the appellants. We are here today on the lower court's dismissal with prejudice of plaintiff's class action complaint. The securities fraud class action arises out of the defendant's alleged concealment of adverse clinical data, internal study data, and related protocol amendments. The district court erred for four primary reasons, Your Honor. First, in finding that the protocol amendments were disclosed for purposes of the federal securities law, the district court applied the wrong standard, a standard of is it publicly accessible? The appropriate legal standard to apply in this situation is were the facts known or reasonably available to investors? And as was held in the Gandino case, in order to determine that it's the defendant's burden to show that the information was conveyed to the public with a degree of intensity and credibility sufficient to counterbalance effectively any misleading information. Let's say that we agree with you that there was error in how the protocol amendments were not public information for purposes of the securities law. Let's say, arguendo, you still have to adequately allege scienter, don't you? Yes, Your Honor. And where do you do that? Well, Your Honor, the protocol, the defendants admit at the end of the class period, well there's two reasons, at the end of the class period the defendants have admitted we adapted the Wolverine study as we went along, modifying the population in response to the data. Moreover, we have a confidential source we cited in our complaint that specifically stated that defendant Glover approved every single protocol amendment based on data. Under our cases, it requires motive and opportunity for money, and I don't see any allegations of that here, or errors that are really statements that are really so gross as to be reckless. That is what the district court found was not adequately claimed. As to the first, which is the usual way of showing scienter, I don't see anything of that sort. That's really what I'd like to see, because the others were reckless, or any number of cases where we have held misstatements of a sort worse than this were not reckless. I just want to know, were these people making money out of it? Well, Your Honor, first, the standard of scienter is recklessness or motive and opportunity. Motive and opportunity is not required here. No, recklessness or, and I've told you, I've seen any number of cases where statements which seem to me to be more reckless than these were not held to be sufficient, which is why I'm focusing on motive and opportunity. Okay, Your Honor. First of all, the defendants, and we cited an example in our brief, made numerous statements during the class period about the trial protocol. Those statements were in direct conflict with what was on the clinicaltrials.gov website. They did this in November 2015. They did this in January 2016. They did this in March 2016. They had insurmountable, they had nearly universally, as the Court recognized, study data that said this drug was not affected and the underlying technology wasn't working, yet they continued to make the same statements about the efficacy, the same statements about the potential market throughout the entire class period. So for recklessness, they had knowledge. These protocol changes changed the whole purpose of this trial. This trial was supposed to be a third-line therapy to treat patients who had failed other therapies. They changed the entire protocol. So you are continuing to emphasize recklessness? Yes, Your Honor, but we have also, I'm sorry, I didn't mean to cut you off. Yeah, go ahead. We've also alleged motive and opportunity. Where? With the approval, with the AS141 contract, and if permitted to amend, we would further bolster those allegations. The defendants realized, they made all these amendments up through November 2015. The last amendment in 2015 significantly changed the protocol. They increased the healthiness of the patients. How does that go to motive and opportunity? Because once they realized this in the fourth quarter, we would show that they decreased spending. They changed their strategy to start other products. They were behind the scenes negotiating this drug, this new drug. The only drug the company had was PNT2. In order to continue operating, they had to get this new drug in place. And they continued to tell the investing public everything was going great until they got this drug in place. Three days later, we're pulling the drug. Investors have said they're not giving us any more money. But that's okay, everyone. We have a new drug now. I don't know that that answers the question, how does that show motive and opportunity? They concealed the data from the clinical trials and the protocols until this contract was finalized and signed at the end of May. If they had disclosed it beforehand, they would likely not have gotten the contract for the drug because they couldn't show that they could successfully fund a drug or bring a drug to market. So in order to be able to get that contract, they had to continue to conceal this information. I have another set of questions, and this goes to the dismissal of prejudice. Did you ask to amend, and if you asked to amend the complaint, did you come in then or now with amendments that would in some way cure what was found to be wrong? Because at least the mood of when a judgment comes down that it is at that point that the plaintiffs know what is wrong and they should be given a chance to cure what is wrong. But that does require that you come in with some indication of what would cure it, and I didn't see that below and so far I haven't seen it here, so I'd like to hear how you'd cure it. Yes, Your Honor. We did request leave to amend in our opposition to the motion to dismiss, and the Court effectively denied that by dismissing the case with prejudice. Given the numerous errors that we . . . You included no proposed amendments. Well, we didn't . . . in our opposition to the motion to dismiss, we weren't aware at that point in time what the Court's perceived deficiencies were. Well, but once you did, did you go back and say, we would like to withdraw the dismissal with prejudice because we would like to make these amendments, which is what happened in Lorelei, and in Lorelei we said you had a right to do that. But I don't see that you did that below or that you're doing it now. What is it that you would change? Your Honor, in our . . . Actually, in the Christie case, it was nearly identical to here. The plaintiff . . . the case was dismissed with prejudice. The plaintiff had request leave to amend in the brief, and then the Court found it was an abuse of discretion, not allowing the plaintiff to amend. And the Court specifically in all these cases have found that the plaintiff didn't give reasons. In our brief, in our brief to Your Honors here, we listed on two pages, pages 58 and 59, all the different things we would do to be able to amend our complaint here. But none of the things you say there really go to the question of scienter, which is what is we have been focusing on as the basis for supporting the district court opinion, even if arguendo we buy everything else that you argue. Well, Your Honor, in the list of items we have here, we have specifically identified that we would further explain the defendant's knowledge of the misleading facts to show that they knew that the drug was not . . . they knew the underlying technology didn't work, the specific reasons the underlying technology worked, the more precise timeline of what the defendants knew and when, the substance of the meetings, the fact that these were day-long research meetings held in Michigan discussing all of the clinical trials. The defendant, Glover, knew that. He was upset about it, and he kept telling them just figure it out and conceal this information. Your amendments would go to make what you already say is reckless more reckless. Yes, we would further bolster that. In addition, we would also bolster the motive and opportunity related to AS-141. The drug acquisition was more specifics about the contract and why the contract to acquire AS-141 showed that they had motive and opportunity to conceal the data until the trial, and then three days later disclose the information. I have a question I'm having trouble figuring out the answer. You say, and correct me if I'm misunderstanding your argument, that the defendants should have disclosed the dates that several of the pilot phase two trial patients stopped taking the PNT-2258. Why is that information material? Because as I read the charts, and perhaps I misread them, these patients had positive responses to the drug. The patients that discontinued the trial, at least one of them had faster disease progression than on PNT-2258 than the prior drug. It also goes overall, Your Honor, one patient in a trial as small is material. It goes to investors' knowledge that the drug had been discontinued, it's either because of disease progression, which is the instance of one of these patients, or an adverse event. That goes to the overall perception of the trial isn't as effective as what they're leading people to believe. Thank you. You'll have two minutes in rebuttal. Your Honor, if you may please the Court, there is no compelling motive in this case. The plaintiffs, I think, waited until page 54 of their opening brief to even discuss motive, and Judge Engelmeyer eloquently dispatched the motive argument about the new drug that the company was acquiring. The company still disclosed the failure of the study in 2016. This all came out... Why is that enough? So, why is it that a disclosure on a website that I've never heard of, at least, clinical trials is enough, in your view? Several reasons, Your Honor. First of all, as this Court held in ENRI AIG 309 Fed Appendix 495, when the defendant itself puts the information in the public domain, that is sufficient. It undercuts any inference of Siener. Why is it cogent and compelling to infer Siener that the company is going to defraud the public? Well, but what does it mean to put it in the public domain? I mean, you know, if I publish something in an unknown journal that nobody reads, is that putting it in the public domain? I'm doing something, but am I really doing this? This is the clinical trials website that the government maintains. It's the website. It's the logical place that you would look. In fact, the plaintiffs themselves repeatedly cited to it. And I think, more importantly... The FDA? Who maintains it? It's the clinical health. The Department of... I believe... It's not the FDA. It's off the tip of my tongue. But it's the U.S. government. The Department of... No, I'm sorry. But it's the U.S. government that runs the website. It's the U.S. government. But do you at least concede that the protocol amendments were not public as a matter of law? We do not concede that. And the prospectus here, by the way, said from the beginning that the protocols may need to be revised on page 815 of the record. So at the beginning, the company disclosed that it might revise the protocols. And there is no duty as a matter of law under 10b-5 to make affirmative statements or to disclose changes when the company says from the beginning that it may change the protocols. Silence, absent a duty to disclose is not misleading. And this company... I beg to differ with counsel's characterization that they said everything was fine after the IPO. Actually, the company expressly refrained from making any affirmative statements about the ongoing clinical trials going well. They made no statements as to the ongoing laboratory work going well. They simply said we're going to release the results mid-2016. So it's just like a company saying we're going to release the quarterly results in two weeks. They don't have a duty to continuously disclose in piecemeal fashion changes that are made. And those changes aren't in any way inconsistent with the purpose of the studies. The company disclosed from the outset... Is it a hybrid? So the pilot phase 2 study was an efficacy trial. It was an exploratory efficacy trial. And the company said... So the goal in these kinds of companies is to get to a phase 3 registration trial, which is the final paper you turn in essentially to the FDA where they determine whether to approve the drug. A phase 1 or a phase 2 is essentially an exploratory study. As the company disclosed, it was to decide how to design further studies. And the company said in the prospectus that they were looking at both second line and third line studies. They disclosed specifically that on page A803 and A878 of the record, they disclosed that they intended to conduct a different study for second line treatments. Paragraph 206 of the complaint, page A99, specifically discusses the company's disclosure about studying the possibility of a second line in addition to a third line treatment. And as the district court found, just by allowing some second line patients into the study, it's not like they excluded all the third line patients. They continued to look at second and third line patients in the study. They explicitly told... The main thrust of your argument is that when you're engaged in studies of this sort, even though they start going negatively and you change the protocol to see just how bad it is, you don't have a duty at that stage to say that that is happening. You shouldn't say everything is going grandly, but you don't have a duty to say, hey, look out, things are going badly, or at least that not saying that is not reckless. That's correct, Your Honor, on both counts. But here, it goes beyond that. The plaintiffs have not pled particularized facts showing how the changes in the protocols actually rendered the statements materially misleading, let alone so grossly reckless as to survive dismissal under count it be Eichler. Couldn't, I mean, the argument, an argument would be this is a motion to dismiss. The company was repeatedly unable to validate the PNT-2258's mechanisms of action in its internal studies. That they knew from, it could be inferred that they knew from 2016 that the and so that the argument would be that we could infer from that that the defendants committed securities fraud by hiding the fact from the market for another six months. I mean, that's the argument. That's the plaintiff's argument, and it's legally incorrect because the defendants in this case did not come out and say, we have continued to do additional research that validates the efficacy of the drug or that the study is going well. No affirmative statement in that regard. Correct. They did not make affirmative statements that the study is going well. Silence is a legitimate option under the securities laws of this country. Other countries like Canada, for example, have continuous disclosure regimes. This country is not a continuous disclosure regime. The plaintiffs don't make an argument that item 303 of regulation SK, for example, requires disclosure. And investors who look at these types of disclosures for clinical stage pharma companies, they don't take the types of representations that are alleged here to be statements that the actual science going on right now is positive because it's understood that those types of results are released at periodic intervals. And here the company said, we're going to tell you in mid 2016 what the interim results are going to be for the investors on notice. These trials take a long time to complete. In any event, you're saying that not doing that is not reckless enough. I mean, if they didn't do that and traded during that time, that would be a different thing because that would be motive and opportunity. But that this failure to come in with saying, hey, things are going badly in this company does not constitute recklessness. We are a long way from that sort of motive and opportunity, Your Honor. And as this Court said in Calnet, when you don't have a compelling motive and when the case, quote, does not present facts indicating a clear duty to disclose, plaintiff's Siena allegations do not provide strong evidence of conscious misbehavior or recklessness, page 144 of that opinion. And that is exactly what Judge Engelmeyer found in this case. He looked at in detail each of the alleged misstatements in this case and he compared them to the duty, if any, that the defendants had to make disclosures. And he found, interestingly, the Omnicare decision came out in 2015 and that has still worked its way through the courts in terms of what needs to be disclosed in respect of an opinion statement. The law in this circuit was frankly, if anything, more sensitive issues just on the material misrepresentation and omission side before Omnicare. And Judge Engelmeyer correctly said there isn't a clear-cut duty that makes it so inexcusable that the company didn't disclose in piecemeal fashion in its own public disclosures what the results of the study or the interim clinical results were. It doesn't rise to that level of gross, severe recklessness that this Court held in Calnet the plaintiff has to satisfy in many, many other cases, as Your Honor noted, have likewise held. This case simply does not involve any clear-cut violation of a duty to disclose. It does not involve any clear material misrepresentations. Just to correct the record on the patient, I'm actually going to just skip to leave to amend since the opposing counsel brought that up. This Court held in the Lehman Brothers case, 650 F. 3rd at page 188. You said you were going to skip to leave to amend. I'm sorry. If you have any questions before I get to that case, I'd be happy. Why shouldn't the district court have granted leave to amend? Sorry, Your Honor. The Court granted dismissal because there was no siener in this case. The plaintiff's allegations do not show any motive that's compelling enough to support a strong inference of siener. There is no clear-cut duty of disclosure that was violated in this case. There were 39 pages of cautionary statements in the prospectus. The company said from the beginning that there could be changes in the protocols. Your adversary outlines in her brief, 57 to 59, different additional allegations that could be provided if she were allowed to amend. That would go, for example, to motive and opportunity. Several responses to that. There are no additional allegations that change the character of this case. The allegations about the other contract, there already were allegations in this case that that was a motive to defraud and the other allegations that are suggested and not in great detail at the end of the plaintiff's brief, they weren't presented to the district court and they don't change the fundamental defect that led to the dismissal. There is no duty of disclosure that is so clear with respect to these issues that the non-disclosures that are alleged would rise to that level. Isn't it a better procedure in cases like this for the district court to state why it will dismiss and then let the plaintiffs come in with suggested changes and then on hearing those actually say, I dismiss with prejudice rather than doing what was done here which is dismiss with prejudice and then when the plaintiffs hear something say, well, that isn't really enough. Isn't just as a matter of procedure a better procedure to let people know what you're doing and then let them answer it? I think in this case, Your Honor, given that there was extensive briefing regarding the grounds for dismissal, given that the standards that we're talking about in this kind of case really are well settled especially with respect to Siena and given that the plaintiffs had opportunities both before and after . . . . . . I might agree with you in this case, but I'm rather troubled by the fact that district courts have continued to do this sort of thing even after there have been cases where we have suggested the opposite. I wonder whether it may not be necessary simply to reverse on that sometime to get it across to district courts that this would be a better procedure. Even though I asked what is it that you would do and I must say I didn't hear much. I believe that this is not the case to make that determination because here . . . I'm sure you do. I think what stitches together the cases that allow amendments is that there has to be some sign of life in the new claims that are presented to the district court and certainly on appeal that give reasonable hope that these claims would pass muster. That just did not occur here. The district court issued an incredibly thorough opinion. These kinds of cases . . . this is an experimental cancer drug case where we want to encourage companies to invest in these types of technologies and by extending litigation through multiple rounds of motions to dismiss unnecessarily when the allegations fall so far short of the line for scienter, I think that has cost to it as well, Your Honor. I understand . . . I think reasonable people can approach it in different ways, but I think the interest of finality is extremely strong in this kind of case where the district court issued a seventy-plus page opinion, meticulously addressed the issues and the proposed new allegations were not presented below and even here, they're not presented in a form that gives any reasonable hope that they could change the outcome. This question is not relevant to the determination of this appeal, but since you raised it, the Canadian system requires continuing disclosures. How does that work? Is it temporally based? Is it on the basis of any time there is something new, it has to be disclosed? There's a materiality threshold. I have Canadian partners who could explain that in much better detail without getting themselves in trouble, but there's a materiality threshold and it has to . . . there's an analysis that you have to do, but it's a different disclosure regime. I understand other countries have that sort of model as well, but we are very much a . . . we're a periodic disclosure regime. Does it mean that if a company, between reporting periods, is starting to lose money, there's a duty to come out in the middle of it and say, hey, we're not doing well this year. That's my answer. There's a materiality threshold. It would be unusual to see that in a U.S. company, obviously, but . . . And there is an AK regime, so there's a . . . That's correct. . . . regime of reporting really unusual events in the U.S. That's correct. That's different from the Canadian regime, I'll grant you that. Yes, Your Honor. Thank you. Thank you. Thank you. Your Honor, the purported risk disclosure my adversary was just speaking about appeared one time in the prospectus, buried in a paragraph that did not refer to any specific trial. Moreover, that statement in and of itself was false, because the Wolverine trial protocol had already been revised. So to warn eight months into a trial, not even specific to that trial, that the protocols might change when you've already changed them, is false. Moreover, Your Honor, the protocols were just . . . Explain that to me. If I tell you that I may change the protocol, and you find out that eight months after the fact I've changed the protocol, how is my initial statement false? That risk has already materialized. It was a risk factor that this may happen. That had already happened. The protocol had been amended in December, for the first time. Then . . . Maybe my logic is not working well, but that sounds like faulty logic. I don't understand how that's false. But go ahead. The protocols were disclosed in the prospectus. The protocols were then amended in August, September, October, and November. But you left out one thing, which is that they also cautioned that the protocols may be subject to amendment. No, Your Honor. That disclosure appeared one time in the prospectus, after the trial had started. It made no reference to the actual Wolverine trial, or any of the trials at issue in this case. It made a reference that indicated, in the future, the protocols might be amended. What you're really saying, then, is that that reference should have been more complete. That is, it should have referred to specific trials? Yes. For example, in the Abelli case. In the Abelli case, the protocol was two stages. Specifically, in the protocol, it said, if stage one shows 30% more efficacy, then we may expand stage two. It was specifically listed in the protocol, with reference to the specific trial, at the outset, not after the trial had begun down the road, for eight months. And that's the difference. In addition, the protocol that was disclosed in the prospectus, they changed it repeatedly, month after month. The protocol changes materially changed the entire patient population that were admitted into the trial. Because all the patients before that, at least 10 we know, had dropped out from disease progression and or death. The protocols that the company disclosed in its own company-issued statements directly contradicted what was in the clinicaltrials.gov website, which was hundreds of pages of amendments. So, if that's not reckless, Your Honor, I don't know what is. You changed the whole purpose, the whole patient population, and you didn't tell anybody. In fact, you continued to maintain the same protocols throughout the class period. As you were getting data that the pilot trial disease progression on PNT was more than it was on prior drugs, you continued to tout this drug as demonstrating preliminary evidence of efficacy. Moreover... Thank you. Thank you, Your Honor. Thank you both for your arguments. The Court will reserve decision.